IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FREDERICK E. BOUCHAT                    *

           Plaintiff                    *

           vs.                          *     CIVIL ACTION NO. MJG-99-1576

                                        *

CHAMPION PRODUCTS, INC.,
et al.                                  *
           Defendants                   *

*      *      *      *      *      *      *      *      *

FREDERICK E. BOUCHAT                    *

           Plaintiff                    *

           vs.                          *     CIVIL ACTION NO. MJG-01-1996

                                        *

K-MART CORP., et al.                    *

           Defendants                   *

*      *      *      *      *      *      *      *      *

<u>MEMORANDUM AND ORDER</u>

     The Court has before it Plaintiff's Motion for Partial

Summary Judgment, Defendants' Motion for Summary Judgment to

Preclude Plaintiff from Recovering Profits and Actual Damages,

Defendants' Motion for Summary Judgment to Preclude Plaintiff

from Recovering Statutory Damages, and the materials submitted by

the parties in relation thereto.  The Court has held a hearing

and has had the benefit of the arguments of counsel.

I.   <u>BACKGROUND</u>[1]

In 1995, Plaintiff Frederick E. Bouchat ("Bouchat") was employed as a security guard at a State Office building.  He enjoyed drawing pictures inspired by comic book characters, in particular Batman.  On November 6, 1995, there was a public announcement that the National Football League ("NFL") Cleveland Browns would be moving to Baltimore within a short time, generating substantial local (Baltimore) interest in a new name for the team.  Bouchat became interested in the new football team and began drawing designs using various possible team names, including "Ravens."

On or about December 5, 1995, Bouchat drew what shall be referred to herein as the "Shield Drawing."



---

[1]  For a more complete discussion of the underlying facts, see the decision on interlocutory appeal in <u>Bouchat v. Baltimore Ravens, Inc.</u> 241 F.3d 350 (4th Cir. 2001).

In March of 1996, the Baltimore team adopted the name "Ravens."  National Football League Properties ("NFLP"), the marketing arm of the National Football League, engaged artists to develop Ravens team logos.

On April 1st or 2nd of 1996, Bouchat sent to the Maryland Stadium Authority a fax of the Shield Drawing[2] with a note written thereon asking the Chairman of the Authority to send the sketch to Mr. Modell, President of the Ravens.  Bouchat further wrote on the note: "If he would like this design if he does use it I would like a letter of recognition and if the team wants to I would like a adiograph (<u>sic</u>) helmet."  There is no evidence that the Ravens or NFLP intentionally caused the Shield Drawing to be provided to the artists creating Ravens' team logo.  Nevertheless, the Shield Drawing was seen by the artists who created what is referred to herein as the "Flying B Logo."



---

[2]   Bouchat claims to have sent other drawings along with the Shield Drawing.  However, Bouchat failed to establish his infringement claims with respect to the other drawings.

NFLP and the Ravens, believing that the NFLP artistic team had developed team logos completely independently, proceeded to use the Flying B Logo as the primary symbol for Ravens team identification.  The first public use of the Flying B Logo occurred in June of 1996 when the Ravens team uniforms were displayed in Baltimore.  The Flying B Logo was, thereafter, used extensively as a team trademark until the end of the 1998 season. Moreover, pursuant to licenses and other forms of permission granted by NFLP, the Flying B Logo was used by hundreds of manufacturers, distributors, sponsors, etc. in connection with their respective business operations.

In July of 1996, Bouchat registered the Shield Drawing with the United States Trademark and Patent Office.  The Ravens, NFLP and hundreds of entities with NFLP permission continued to utilize the Flying B Logo[3] as a symbol of the Ravens football team.

Bouchat, by counsel, contacted the Ravens and NFLP and claimed that the Flying B Logo and certain other logos infringed copyright interests Bouchat had in the Shield Drawing and certain other drawings.  The Ravens and NFLP did not agree with Bouchat's claims and continued to use the logos in question.

---

[3]   And other logos.

In May of 1997, Bouchat filed <u>Bouchat v. Baltimore Ravens,</u> <u>Inc.,</u> MJG-97-1470 ("Bouchat I") against the Ravens and NFLP asserting infringement of copyright interests in the Flying B Logo and certain other Ravens team logos.  Thereafter, Bouchat has filed four (so far) additional cases based upon use of the Flying B Logo.  <u>Bouchat v. Champion Products, Inc., et al.,</u> MJG-99-1576 ("Bouchat II"); <u>Bouchat v. Baltimore Ravens Limited</u> <u>Partnership, et al.,</u> MJG-01-647 ("Bouchat III"); <u>Bouchat v. K-</u> <u>Mart Corporation, et al.,</u> MJG-01-1996 ("Bouchat IV") and <u>Bouchat</u> <u>v. Seven-Eleven, Inc.,</u> MJG-03-2229 ("Bouchat V").  Bouchat II, III, and IV were filed while Bouchat I was pending.

The Court bifurcated Bouchat I with a first phase trial on liability issues to be followed by a second phase trial, if necessary, on damages issues.  In the Bouchat I first phase (liability) trial, the jury found, on November 3, 1998, that Plaintiff had proven infringement of the Shield Drawing, but not the other drawings at issue.  After the resolution of post-trial motions, the Court certified certain questions for interlocutory appeal pursuant to 28 U.S.C. §1292(b).  On October 3, 2000, the Fourth Circuit affirmed the finding of liability in Bouchat I. See <u>Bouchat v. Baltimore Ravens, Inc.,</u> 241 F.3d 350 (4th Cir. 2001).  Thereafter, Bouchat I proceeded to the second (damages) phase.

In the second (damages) phase trial of Bouchat I, Bouchat sought damages pursuant to 17 U.S.C. § 504(a)(1) which permits recovery for:

> The copyright owner's actual damages and any additional profits of the infringer, as provided by [17 U.S.C. § 504(b).

In Bouchat I, Bouchat made no claim for his actual damages, did not seek to recover statutory damages, but sought only a disgorgement of profits pursuant to §504(b) of the Copyright Act. Accordingly, the only issue presented for resolution at the damages phase trial of Bouchat I was the amount, if any, of profits of the Defendants that were attributable to the infringement.

The Court decided, in the summary judgment phase of Bouchat I, that the only receipts which possibly could include any portion attributable to the infringement were those revenues derived from the licensing of merchandise bearing the Flying B Logo and sales of soft drinks in souvenir cups bearing the Flying B Logo.[4] The Court held that there was no issue of fact between the parties as to the amount of these receipts or as to the

---

[4] The Court granted summary judgment to Defendants as to Bouchat's claim that a portion of essentially all revenues, i.e., ticket sales, stadium parking, radio and television broadcast rights, etc. was attributable to the use of his artwork. The appeal of Bouchat I is pending.

6

expenses to deduct to compute the total profits derived from such
sales.

Accordingly, the fact finder[5] was presented with the
following questions:

1.   Have Defendants proven by a preponderance of the
     evidence that income derived by Defendants from
     the sale of products bearing the Flying B Logo was
     attributable completely to factors other than the
     artwork of the Flying B Logo?

     [If not]

2.   What percentage of the income derived by
     Defendants from the sale of merchandise bearing
     the Flying B Logo have Defendants proven, by a
     preponderance of the evidence, was attributable to
     factors other than the artwork of the Flying B
     Logo?

3.   What percentage of the income derived by
     Defendants from the sale of soft drinks in
     souvenir cups at Baltimore Ravens home football
     games have Defendants proven, by a preponderance
     of the evidence, was attributable to factors other
     than the artwork of the Flying B Logo?

---

[5]  In Bouchat I there was an issue as to whether the judge
(as Defendants contended) or jury (as Plaintiff contended) was to
decide these issues.  The Court tried the profits issue
simultaneously as a bench and jury trial, rendering a bench
decision as well as receiving a jury verdict.  Judgment was
entered based on the jury verdict but the bench decision is
available should an appellate court direct the entry of judgment
based upon the court's factual findings.  The question of whether
there is a right to jury trial on the profits attribution
question is presented in Bouchat II and IV but is moot by virtue
of the instant grant of summary judgment.

The jury answered the first question in the affirmative.[6] Hence the jury found that Defendants had proven by a preponderance of the evidence that 100% of the income derived by Defendants from the licensing for sale of products bearing the Flying B Logo was attributable to factors other than the use of Bouchat's artwork.  Based on the jury verdict, Plaintiff was not entitled to any monetary recovery from the Ravens and NFLP for profits attributable to the use of the Flying B Logo on licensed merchandise.  The Court entered judgment in Bouchat I consistent with the jury's verdict[7] on July 26, 2002.

The instant motions are pending in Bouchat II and Bouchat IV[8] in which Plaintiff has sued hundreds of manufacturers, distributors, retailers and other entities that used the Flying B Logo in the course of their respective business operations.  All of the Bouchat II and IV Defendants used the Flying B Logo pursuant to the permission (through licenses and/or other agreements) of NFLP for the use of all NFL team logos.

---

[6]  This Court as fact finder answered the question "no," but held that Bouchat was entitled to less than $25,000 in damages. Thus, ironically, the bench decision was more favorable to Plaintiff than the jury verdict.

[7]  The parties agreed that, since Plaintiff sought a jury verdict, Judgment should be entered upon the verdict.

[8]  Bouchat III, in which the Defendants are entities related to Baltimore Ravens, Inc., a Bouchat I Defendant remains pending.

Accordingly, it is appropriate to refer to the Bouchat II and

Bouchat IV Defendants as "Downstream Defendants."

By their instant Motions, both sides seek partial summary

judgment.  Plaintiff seeks summary judgment on the issue of

infringement, claiming that, by virtue of collateral estoppel,

the Bouchat II and IV Defendants are bound by the Bouchat I

liability phase jury verdict.  Defendants seek summary judgment

on Bouchat's damage claims.


II.  <u>LEGAL STANDARD</u>

In deciding a summary judgment motion, the Court must look

beyond the pleadings and determine whether there is a genuine

need for trial.  <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith</u>

<u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The Court must determine

whether the evidence presents a sufficient disagreement to

require submission to a jury or whether the evidence is so one-

sided that one party must prevail as a matter of law.  <u>See</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-53 (1986).  If

the defendant carries its burden by showing an absence of

evidence to support a claim, the plaintiff must demonstrate that

there is a genuine issue of material fact for trial.  <u>See</u> <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 324-25 (1986).  The Court must

look at the evidence presented in regard to the motion for

summary judgment through the non-movant's rose-colored glasses but must view it realistically. Nevertheless, the non-movant is entitled to have all reasonable inferences drawn in his favor. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).

An issue of fact must be both genuine and material in order to forestall summary judgment. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the plaintiff. <u>See</u> <u>Anderson</u>, 477 U.S. at 248. An issue of fact is material only if the establishment of that fact might affect the outcome of the lawsuit under governing substantive law. <u>See</u> <u>id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (internal citations omitted).


III. <u>DISCUSSION</u>

    A.   <u>Infringement</u>

Plaintiff seeks to bind the Downstream Defendants by the Bouchat I jury's verdict that the use of the Flying B Logo infringed Plaintiff's copyright in the Shield Drawing. Plaintiff thus seeks to assert estoppel based on the outcome in Bouchat I against non-parties to the original action.

Estoppel generally is asserted against a party (plaintiff or defendant) who has <u>litigated and lost</u> an issue in a prior action.

10

In <u>Parklane Hosiery v. Shore</u>, 439 U.S. 322, 330 (1979), the
United States Supreme Court stated that in certain circumstances
it is possible for a plaintiff to assert estoppel "offensively"
against a defendant who has previously litigated and lost an
issue.   In <u>Parklane</u>, there was a new plaintiff, who could not
have easily intervened in the prior action, seeking to assert
estoppel against a defendant who had lost on a dispositive issue
in a prior action.   The instant case presents a different
situation from that presented in <u>Parklane</u>.   Here, Plaintiff seeks
to bind Defendants, who were <u>not</u> parties in the original case,
based on their relationship to NFLP, one of the original
defendants.

     In general, a litigant cannot be bound by the result of a
prior litigation in which the litigant had not been a party.
However, in certain circumstances a party in a current case who
is in privity to a party in a prior case may be so bound.   <u>See</u>
<u>Sullivan v. Easco Corp.</u>, 662 F.Supp 1396, 1407 (D. Md. 1987).
"Because preclusion based on privity is an exception to the deep
rooted historic tradition that everyone should have his own day
in court . . . courts must ensure that the relationship between
the party to the original suit and the party sought to be
precluded in the later suit is sufficiently close to justify

preclusion." <u>Tyus v. Schoemehl</u>, 93 F.3d 449, 455 (8th Cir. 1996)
(internal citation omitted).

In the instant litigation, both sides take essentially
inconsistent positions.  In Bouchat I, Bouchat prevailed on
liability issues, but lost on damages issues and received
nothing.  Hence, Bouchat wishes to bind the Downstream Defendants
by the liability verdict while avoiding any binding effect of the
damages verdict.  Defendants take the opposite stance.  The Court
concludes that neither side is entitled to any inconsistency.
The issue resolution in Bouchat I is binding on all of the
Bouchat II and IV parties.

The doctrine of "virtual representation" permits a non-party
to a prior lawsuit to be bound by the result thereof if one of
the parties to the prior suit "is so closely aligned with his
interests as to be his virtual representative." <u>Tyus</u>, 93 F.3d at
454.  The Downstream Defendants used the Flying B Logo by virtue
of a contractual right granted by NFLP.  They did so based upon
NFLP's guarantee that all of the NFL team logos (including the
Flying B Logo) could legally be used by them.  The Downstream
Defendants used the Flying B Logo with indemnification by NFLP
against any claim or liability for such use.  Indeed, NFLP is
providing the Downstream Defendants with the very same counsel
who represented NFLP in Bouchat I.  Furthermore, there is no

12

material difference, if there is any difference at all, between
the liability issues presented in Bouchat I and those presented
in Bouchat II and IV.

The Fourth Circuit has stated that "a party acting as a
virtual representative for another must do so with at least the
tacit approval of the court." Klugh v. United States, 818 F.2d
294, 300 (4th Cir. 1987) (rejecting an argument that alignment of
interests was sufficient to justify applying res judicata effect
on the basis of the virtual representation doctrine), see also
Wise v. City of Norfolk, 215 F.3d 1234 (4th Cir. 2000)
(unpublished disposition) (restating rule that a court must at
least be on notice that the party is virtually representing the
interests of the non-party).

In the instant case, the Court did not give explicit
approval to NFLP to virtually represent the interests of the
Downstream Defendants because the matter was not presented to the
Court.  However, it is beyond doubt that had the matter been
presented, this Court would have approved NFLP's representation
of its licensees and others using the logos at issue by virtue of
NFLP permission.  Moreover, Bouchat I involved the very same
sales of Flying B Logo-bearing merchandise that are at issue in
Bouchat II and IV.  Thus, the Bouchat II and IV Defendants'
reliance upon NFLP to litigate the issues in Bouchat I was

13

perfectly obvious.   Indeed, all (or at least virtually all) of
the Bouchat II and IV Defendants were represented by the same
counsel as NFLP during the joint pendency of Bouchat I, II and
III.   Of course, no Downstream Defendant expressed any interest
in joining Bouchat I or expressed any concern with having NFLP
present the defense position in Bouchat I on issues that were
common to Bouchat II and IV.

     Furthermore, the Court notes that the application of
offensive collateral estoppel is subject to equitable
considerations and the "broad discretion" of the Court.   <u>Parklane
Hosiery</u>, 439 U.S. at 331.   The determination of privity is an
equitable consideration that is not amenable to rigid
construction.   <u>See, e.g.</u> <u>U.S. v. Manning Coal Corp</u>., 977 F.2d
117, 121 (4th Cir. 1992)("privity is no talismanic concept...
[i]t is merely a word used to say that the relationship between
the one who is a party on the record and another is close enough
to include that other within the res judicata") (internal
citations omitted).   "'Privity,' as used in the context of res
judicata and collateral estoppel, does not embrace relationships
between persons or entities, but rather it deals with a person's
relationship to the subject matter of the litigation." <u>Manning
v. South Carolina Department of Highway and Public Transp.</u>, 914
F.2d 44, 48 (4th Cir. 1990).

Moreover, as noted above, the Downstream Defendants seek to bind Plaintiff to the prior determination with regard to damages, on the basis that they are "privities" of the Bouchat I Defendants and thus may prevent relitigation of issues that were determined <u>vis a vis</u> NFLP.  The Downstream Defendants present no persuasive argument for the proposition that they are in privity for damages issues, but not liability issues.

In sum, the Court holds that the Downstream Defendants were virtually represented by NFLP in Bouchat.  They are, therefore, bound by the findings in that case.  Accordingly, it is established in Bouchat II and IV that the use of the Flying B Logo by the Downstream Defendants infringed Bouchat's copyright in the Shield Drawing.


B.  <u>Damages</u>

The federal copyright statute provides that an infringer is liable for the greater of

> (1) the copyright owner's actual damages [plus] any additional profits of the infringer, as provided in subsection (b); or

> (2) statutory damages, as provided by subsection (c).

17 U.S.C. § 504(a).

Accordingly, it is necessary to consider Bouchat's ability to recover the following categories of damages for the Downstream Defendants' infringing use of the Flying B Logo:

- Bouchat's actual damages,

- The profits of the Downstream Defendants "that are attributable to the infringement." [17 U.S.C. § 504(b).

- Statutory damages under 17 U.S.C. § 504(c).

The Downstream Defendants seek summary judgment as to all of Bouchat's claims for damages. As discussed herein, the Court concludes that the Downstream Defendants' position is correct and that judgment should be entered in Bouchat II and IV, as it was in Bouchat I, determining that Plaintiff is entitled to recover no damages.

### 1.    Actual Damages

As in Bouchat I, Bouchat declines to seek a recovery of actual damages in Bouchat II and IV. Presumably, Bouchat has again made a tactical decision in view of the rather minor amount of actual damages that he sustained. In any event, inasmuch as Bouchat seeks no actual damage award, the Downstream Defendants are entitled to summary judgment on the matter.

16

2.  <u>Profits Attributable to Infringement</u>

In the instant cases, Bouchat seeks - as he did in Bouchat I - to recover the profits of the infringers attributable to the infringement.  The instant cases present the same legal issues as were presented in regard to the recovery of infringer profits in Bouchat I.  The parties have not shown the Court a valid reason to change its rulings made on summary judgment in Bouchat I.  Accordingly, for reasons stated in Bouchat I, the Court holds the following:

- The only category of profits that could conceivably be attributable to the infringement are those profits derived from the sale of merchandise bearing the Flying B Logo.[9]

- The fact finder for a trial of Bouchat's claim for profits of the infringers would be the judge and not a jury.[10]

Accordingly, to the extent that Bouchat is making any claim regarding the Downstream Defendants' profits from sources other than the sale of merchandise bearing the Flying B Logo, summary judgment shall be granted to the defense.  Therefore, the only

---

[9]  See the Corrected Memorandum and Order issued January 31, 2002 and the Supplemental Memorandum and Order issued January 31, 2002 in Bouchat I.

[10]  See the Memorandum and Order of February 1, 2002 in Bouchat I.  Note that Bouchat I was tried simultaneously to the court and a jury in view of the uncertainty as to Bouchat's jury right.  The jury verdict for Defendants in Bouchat I mooted the jury right issue.

potentially viable profits claim in Bouchat II and IV is based upon the sale of merchandise bearing the Flying B Logo. Accordingly, it is necessary to consider whether, by virtue of the doctrine of estoppel, the Downstream Defendants are entitled to summary judgment as to profits derived from the sale of merchandise bearing the infringing Flying B Logo.

In Bouchat I, the factual issue resolved by the jury was whether any portion of the profits derived from the sale of merchandise bearing the Flying B Logo was attributable to the infringing use of Bouchat's artwork. That is, the Bouchat I jury decided whether any part of the merchandise sales of NFLP licensees could be considered attributable to Bouchat's artwork.[11]

The jury determined that no part at all of NFLP's profits, that is, no part of the royalties generated by the Downstream Defendants' sales of Flying B Logo bearing merchandise was attributable to the infringement. Accordingly, in Bouchat I, the jury found that 100% of the proceeds from sales of that merchandise was attributable to factors other than the use of the infringing Flying B Logo. Bouchat cannot now relitigate the matter in Bouchat II and IV. It is, therefore, definitively

---

[11]   The profits at issue in Bouchat I were those earned from the sales of Flying B Logo-bearing merchandise sold by NFLP's licensees.

established that no profits derived from the sale of Flying B
Logo bearing merchandise by the Bouchat II and IV Defendants is
attributable to the infringement.

Plaintiff argues that he cannot be bound to the
determination of profits in the prior litigation on the basis
that the claim is not the same because "different facts would be
involved in establishing the infringers' profits in this case
from those in the prior case." Pl's Opp. at 6. Plaintiff points
out that with regard to damages, multiple infringers are
severally (but not jointly) liable for awards of profits, thus
each infringer is liable for its own illegally-gained profits,
and not for the profits of other defendants. Frank Music
Corporation v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 519 (9th
Cir. 1985). This may be true, but where, as here, there are no
profits attributable to the infringement, there is nothing for
which the Downstream Defendants would be jointly or severally
liable. In whatever fashion one might establish the amount of
each Bouchat II and IV Defendants' profits, and however large
that amount may be, Bouchat's share would remain zero percent.

Even assuming that Plaintiff's claim for profits against the
Downstream Defendants would not satisfy the identity of claims

prong of the test for claim preclusion[12], Plaintiff would nevertheless be precluded from re-litigating the _issue_ of what percentage of the revenue from sales of licensed merchandise was attributable to the use of the infringing Flying B Logo.  Issue preclusion, or collateral estoppel, "precludes relitigation of issues of fact or law which have been actually determined and necessarily decided in prior litigation in which a party against whom collateral estoppel is asserted had a full and fair opportunity to litigate."  _Virginia Hosp. Ass'n v. Baliles_, 830 F.2d 1308, 1311 (4th Cir. 1987).  The claim presented need not be the same for collateral estoppel to preclude relitigation of an issue.  _See Parklane Hosiery_, 439 U.S. at 327 n.5.

What Plaintiff is barred from relitigating here is the issue of what _percentage_ of profits - necessarily dependent upon the amount of sales - from the sale of licensed merchandise bearing the infringing logo was attributable to the use of Plaintiff's copyrighted artwork.  Plaintiff had a full opportunity to litigate that issue in Bouchat I, fully litigated it, and

---

[12]  For res judicata to apply to bar a claim, there must be 1) a final judgment on the merits of the prior suit, 2) identity between the causes of action in the instant and prior suits, and 3) identity or privity of parties in the two suits.  _See Nash County Bd. of Educ. v. Baltimore County_, 640 F.2d 484, 486 (4th Cir. 1981).

received the verdict of the jury.  Plaintiff is thus precluded from relitigating it.

In Bouchat II and IV, as in Bouchat I, the percentage of profits derived from the sale of Flying B Logo bearing merchandise attributable to the infringement is zero. Accordingly, Bouchat can recover no damages from the Downstream Defendants for their profits attributable to the infringement.


### 3.  Statutory Damages

In federal copyright law,

> a copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court [i.e. a jury] considers just.

17 U.S.C. §504(b).

Therefore, in Bouchat I, Bouchat had the option to seek statutory damages from NFLP.[13]  Had he chosen to do so, the Bouchat I jury would have made a discretionary decision to award

---

[13]  Had Bouchat sought statutory damages from both of the Bouchat I Defendants, it would have been necessary to decide in that action whether he was entitled to one or two statutory damage awards.

anywhere between $750 and $30,000 of statutory damages against NFLP for infringements including the very infringements that are at issue in Bouchat II and IV.  In Bouchat I, Bouchat could have elected to take the greater of the statutory damages award or the sum of his actual damages plus profits of the infringer.

In Bouchat II and IV, Bouchat seeks to recover statutory damages awards from the Downstream Defendants, all of whose infringements were at issue in Bouchat I.  Moreover, Bouchat presents the proposition that he is entitled to a separate statutory damages award with respect to each Downstream Defendant.  Hence, according to Bouchat's counsel, because he decided to file separate lawsuits, thereby splitting his claim against NFLP, he can multiply the amount of the statutory damages award.  Instead of a discretionary jury statutory damages award from between $750 and $30,000 from NFLP, Bouchat would be entitled to at least 350[14] of such awards so that, in Bouchat II and IV,[15] the jury would have discretion to give him anywhere from $262,500 to $10,500,000 in statutory damages.  Thus, Bouchat, whose actual damages are no more than $10,000[16] and

---

[14]   The approximate number of Defendants in Bouchat II and IV.

[15]   Which would be tried together.

[16]   The amount that NFLP would have paid a professional commercial artist to create a team logo.

whose work has been found to have contributed nothing to the infringers' profits, can ask a jury to exercise its discretion to make him a multi-millionaire.  As discussed herein, the Court concludes that Bouchat is not entitled to the windfall that he seeks.


a.  <u>Res Judicata</u>

Res judicata can apply to bar a claim, if there has been  1) a final judgment on the merits of a prior suit, 2) identity between the causes of action in the instant and prior suits, and 3) identity or privity of parties in the two suits.  <u>See</u> <u>Nash County Bd. of Educ. v. Biltmore County</u>, 640 F.2d 484, 486 (4th Cir. 1981).

The purpose of preclusion doctrines is to promote judicial economy and prevent claim-splitting.  "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries'... [thus giving] a plaintiff a strong incentive to join all potential defendants in the same action if possible."  <u>Parklane</u>, 439 U.S. at 329-330, <u>see also</u> <u>Commissioner of Internal Revenue v. Sunnen</u>, 333 U.S. 591, 597 (1948) (purpose of res judicata is the same).

(1) <u>Privity</u>

As discussed above, "'privity,' as used in the context of res judicata and collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation." <u>Manning</u>, 914 F.2d at 48.  Thus, it is not the licensee/licensor relationship that places the Downstream Defendants in privity with the Bouchat I Defendants, but the Downstream Defendants' relationship with the Bouchat I litigation.  Defendants, as licensees who produced the infringing products pursuant to agreements with the Bouchat I Defendants, are each joint infringers with the Bouchat I Defendants.

Multiple parties will be jointly and severally liable for infringement of a copyright when they "participate in, exercise control over, or benefit from an infringement." <u>Sygma Photo News, Inc. v. High Society Magazine, Inc.</u>, 778 F.2d 89, 92 (2d Cir. 1985).  In the instant case, the Downstream Defendants were manufacturing and selling goods carrying the Flying B Logo under express licensing agreements with NFLP to the financial benefit of both.  Thus, all of the Downstream Defendants were "participating" in the infringement initiated by NFLP when they used the Flying B Logo to represent the Ravens football team. <u>See, e.g.</u> <u>U.S. Media Corp. v. Edde Entertainment Corp.</u> 1998 WL

24

401532 *20 (S.D.N.Y. 1998) (finding that a supplier, distributor,
and retailers would be jointly and severally liable for the
infringement of a copyrighted film that they copied, distributed,
and sold).

As discussed above in the context of Bouchat's contention
that the Downstream Defendants are bound by the Bouchat I
liability verdict, the Bouchat II and IV Defendants are in
privity with NFLP, a Bouchat I Defendant.


### (2)   Identity of Claims

Identity of a cause of action has been defined as "whether
the same primary right is asserted," or, alternatively, whether
the suit is based on the same facts and evidence. Nash County,
640 F.2d at 487.  Courts have stated that when the operative
facts underlying the litigation are the same, res judicata may
apply even when a different theory of recovery is asserted in the
later suit.  See, e.g., Williamson v. Columbia Gas & Elec.
Corp., 186 F.2d 464, 469-70 (3d Cir. 1951).

In Bouchat I, Plaintiff litigated the issue of damages for
the infringement of his copyright in the Shield Drawing by its
licensing by the Ravens and the NFLP for use on merchandise
bearing the Flying B Logo.  Plaintiff sought damages pursuant to
17 U.S.C. § 504(a)(1) which permits recovery for:

25

> The copyright owner's actual damages and any
> additional profits of the infringer, as
> provided by [17 U.S.C. § 504(b).]

Plaintiff made no claim for his actual damages or for statutory damages. Instead, Plaintiff sought only the "profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b).

In Bouchat I, the jury found that one-hundred percent of the profits that the Bouchat I Defendants earned from the sale of such merchandise was attributable to factors other than the use of the Flying B Logo. Therefore, the jury found there were no profits attributable to the infringement. Moreover, Bouchat chose to allow Bouchat I to go to Judgment without having elected a statutory damage award with respect to the very same infringements at issue in Bouchat II and IV.

In Bouchat II and IV, Plaintiff places at issue the same infringements that were at issue in Bouchat I. This time, he wishes to try a different litigation strategy[17] and seek statutory damages. He cannot be permitted to do so. See In re Southeast Banking Corp., 69 F.3d 1539, 1553 (11th Cir. 1995),

---

[17]  In Bouchat I, Bouchat, for tactical reasons, decided not to present the jury with a claim for statutory damages. Presumably, he wished to avoid a defense argument that a statutory damage award, capped at $30,000, would provide more than adequate compensation. In any event, the strategy failed.

<u>Balderman v. U.S. Veterans' Administration</u>, 870 F.2d 57, 62 (2d Cir. 1989) (the fact that litigant "selected a litigation strategy he now regrets, placing all his eggs in [one] basket" would not prevent a preclusive effect against him); <u>see also</u> <u>Dionne v. Mayor and City Council of Baltimore</u>, 40 F.3d 677, 683 (4th Cir. 1994) (claim preclusion "forc[es] a plaintiff to raise all possible theories of recovery and to demand all desired remedies in one proceeding at the peril of losing all not raised in it"),  <u>Nevada v. United States</u>, 463 U.S. 110 (1983) (res judicata can act to bar "any admissible matter which might have been offered" to "sustain or defeat a claim or demand").

Thus, because Plaintiff chose not to present his claim for statutory damages from the primary infringer, NFLP, in Bouchat I, he is precluded from doing so against NFLP's licensees in Bouchat II and IV.


### (3) <u>Pre-Registration Infringement</u>

The Downstream Defendants present, as an additional ground for rejection of Bouchat's statutory damage claim, the contention that the infringements at issue commenced prior to Bouchat's registration of the work at issue.

The Copyright Act provides:

> [N]o award of statutory damages or of
> attorneys fees, as provided by Sections 504
> and 505, shall be made for:
>     (1) any infringement of copyright in an
> unpublished work commenced before the
> effective date of its registration; or
>     (2) any infringement of copyright
> commenced after first publication of the work
> and before the effective date of its
> registration, unless such registration is
> made within three months after the first
> publication of the work.

17 U.S.C. § 412.

Defendants argue that because Plaintiff's work was

unpublished at the commencement of the infringement, he is not

entitled to recover statutory damages at all.  Further,

Defendants argue, Plaintiff is not entitled to the three month

"grace period" provided by §412(2) because, at the time of

registration, the Shield Drawing had either been published by

Bouchat more than three months earlier or had not been published

at all.

### (a)   "Publication" by Bouchat I Defendants

Plaintiff argues that the June of 1996 public display of the

Flying B Logo by the Bouchat I Defendants constituted

"publication" of the Shield Drawing for the purposes of

application of the registration grace period.  This argument is completely meritless.

First of all, the Flying B Logo was derived from, but is not identical to, the Shield Drawing that Bouchat drew.  Accordingly, a publication of the Flying B Logo would not be the equivalent of a publication of the Shield Drawing that Bouchat registered.

Moreover, Bouchat's proposed interpretation of the term "publication" would conflate publication with infringement and would render the registration requirement largely nugatory.[18] Courts considering the matter in the context of fair use have found that "publication" requires the consent of the owner.  See Religious Tech. Center v. Lerma, 1996 WL 633131 *7 (E.D. Va. 1996), citing Harper & Row Pub., Inc. v. Nation Enterprises, 471 U.S. 539, 552 (1985), Religious Tech. Center v. Netcom, 923 F.Supp. 1231, 1242 n.9 (N.D. Ca. 1995)("'Publication,' as defined in 10 U.S.C. §101, requires that the owner consent to selling, leasing, loaning, giving away, or otherwise making available to the general public, the original or copies of the work.").

---

[18]  In addition, such an interpretation would be nonsensical in light of the fact that the right of first publication is recognized as a fundamental right of the copyright holder.  See 17 U.S.C. 106, Harper & Row Pub., Inc. v. Nation Enterprises, 471 U.S. 539, 552 (1985).

There is no reason why this perfectly reasonable
interpretation of the meaning of the term "publication" would not
apply in the statutory damages context as well.   Therefore, the
Court holds that publication or use of the infringing logo by the
Bouchat I Defendants cannot constitute "publication" for the
purposes of the three-month grace period.   Therefore, statutory
damages are not available for pre-registration infringement by
virtue of any pre-registration "publication" by the Bouchat I
Defendants.


(b)   <u>Publication by Plaintiff</u>

Alternatively, Defendants argue that because Plaintiff
"published" the work more than three months before registering,
he is barred from collecting statutory damages, which are
available only for infringements of unpublished works, as
provided by §412(1), or for published works registered within the

grace period, §412(2).  Although the matter is moot,[19] the Court

will discuss this issue in the interest of completeness.

Plaintiff registered his drawing on July 25, 1996.

Defendants argue that Plaintiff "published" his work by making it

available to a public audience on several occasions beginning in

December 1995.  At that point Bouchat gave copies of the Shield

Drawing to friends, and began to display it at his office

building guard booth.  At the latest, Defendants argue, Plaintiff

"published" the Shield Drawing when he faxed it to the Maryland

Stadium Authority on April 1 or 2, 1996 (more than three months

before registration).  Plaintiff contends that his limited

distribution of the work prior to registration does not

constitute "publication" for the purposes of the statute.

"Publication" is defined in the Copyright Act as "the

distribution of copies... of a work to the public by sale or

other transfer of ownership, or by rental, lease, or lending... a

---

[19]    As discussed above, Bouchat's contention that he met
the pre-registration publication requirement by virtue of the
Bouchat Defendants' public display of the Flying B Logo in June
of 1996 has been rejected.  Since Bouchat does not contend that
there was any other pre-registration publication, he renders moot
the question of whether he published the work more than three
months prior to registration so as to provide a further ground
for barring statutory damages for infringements commencing prior
to registration.

public performance or display of a work does not of itself
constitute publication." 17 U.S.C. 101.

In <u>Burke v. Nat'l Broadcasting Co.</u>,598 F.2d 688 (1st Cir.
1979), the First Circuit provided a discussion of the levels of
exposure of a work to the public that can constitute publication.
"A general publication occurs when a work is made available to
members of the public at large without regard to who they are and
what they propose to do with it." <u>Id.</u> at 691.   The number of
copies distributed is not determinative of whether general
publication has occurred, instead, the question is whether the
work was "made available to those interested" in receiving it.
<u>Id.</u>, <u>see also</u> <u>Brown v. Tabb</u>, 714 F.2d 1088, 1091-92 (11th Cir.
1983).  By contrast, a "limited publication" may exist when a
work is distributed to "a limited class of persons and for a
limited purpose... without the right of diffusion... [and]
restricted as to <u>both</u> <u>persons</u> <u>and</u> <u>purpose</u>." Burke, 598 F.2d at
692 (internal citation omitted).  "If either of these two
criteria is lacking, the disclosure constitutes a general
publication." <u>RPM Management, Inc. v. Apple</u>, 943 F.Supp. 837,
842 (S.D. Ohio 1996). Several courts have held that a limited
publication does not constitute "publication" for the purposes of
statutory damages.  <u>See, e.g.</u>, <u>id.</u>, <u>Aerospace Srvcs Int'l v. LPA</u>
<u>Group, Inc.</u>, 57 F.3d 1002, 1003 (11th Cir. 1995).

Plaintiff argues that his distribution of several copies of his work to friends and as Christmas cards was a "limited distribution" that did not amount to publication.  However,

> disclosure of a protected work to only one
> person can nevertheless qualify as a general
> publication if the disclosure is not subject
> to either express or implied limitations on
> the purpose for such disclosure.  The absence
> of restriction on the person's ability to
> reproduce, distribute or sell the work under
> these circumstances can, in theory at least,
> result in the disclosure of the work to the
> general public, the critical factor in a
> 'general publication.'

RPM Management, 943 F.Supp. at 842.

There is no evidence that Plaintiff restricted any of the recipients of his drawing as to their use thereof.  See White v. Kimmel, 193 F.2d 744, 745 (9th Cir. 1952) (copies distributed to a limited group of individuals with no limitations on re-distribution except a request not to distribute "in published form" constituted a general distribution).

In sum, if the matter were not moot, the Court would grant summary judgment to the Downstream Defendants on the issue of Plaintiff's December 1995 publication of the Shield Drawing.  Accordingly, statutory damages are not available for any pre-registration infringement.

33

(c)   <u>Date of Commencement of</u>
           <u>Infringement</u>

As discussed above, either Plaintiff's work was unpublished at the time of the registration or was published by him more than three months prior to registration.   Therefore, Bouchat cannot obtain statutory damages for any infringement "commencing" before the date of registration, July 25, 1996.   17 U.S.C. §412(1).

When an infringement commences before the registration date, the fact that it continues thereafter does not create or reestablish a right to statutory damages for that infringement. See <u>Johnson v. Jones</u>, 47 U.S.P.Q. 2d 1481, 1490 (6th Cir. 1998) (collecting cases) ("Every court to consider this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of section 412 when the first act in a series of acts constituting infringement occurs."), <u>Johnson v.</u> <u>Univ. of Virginia</u>, 606 F.Supp 321, 325 (E.D. Va. 1985) (holding that when a single photograph had been reproduced by the defendants before and after registration, those instances of reproduction that occurred post-registration would not support an award of statutory damages, as the infringement vis-a-vis that photograph was deemed to have "commenced" prior to registration).

Thus the question presented is whether the Downstream Defendants' use of the logo constitutes a "continuing"

34

infringement such that it would be deemed to have commenced at the date of the initial infringement by the Bouchat I Defendants.

Defendants argue that because they are NFLP licensees, they "step into [NFLP's] shoes" for the purposes of determining the commencement date for the infringement. See Def's Memo in Support - Stat. Dam., at 11. They contend that because their infringing actions in producing and selling the licensed merchandise authorized by NFLP were merely continuing actions in one large "scheme" that constituted the infringement, the "commencement date" of such infringement should be deemed to be the date on which NFLP produced the infringing Flying B Logo and licensed its use on merchandise.

The Court concludes that the Downstream Defendants are correct. The "seminal" infringement that was the basis for all of Defendants' actions with regard to the infringing logo occurred when the Shield Drawing was used by NFLP's artistic personnel to create the Flying B Logo that was publically displayed in June of 1996 and licensed for use on merchandise as part of NFLP's "all team and all logo" marketing program. The fact that some Flying B Logo bearing merchandise was produced and sold after registration does not affect the date of commencement of the infringement.

Therefore, the commencement date for the purposes of
determining Plaintiff's entitlement to statutory damages is prior
to the date that Plaintiff registered his copyright.
Accordingly, he is not entitled to recover statutory damages from
the Bouchat II and IV Defendants.

C.   <u>Amount of Any Statutory Award</u>

As discussed above, the Court concludes that Bouchat is
entitled to no statutory damage award in Bouchat II and IV.
Therefore, it is not necessary to address the amount of any
statutory damage award that Bouchat could seek if he were not
barred from doing so.   Nevertheless, because this issue appears
to be one of first impression and because it could potentially be
addressed on appeal, the Court will discuss the matter.

1.   <u>Number of Statutory Damage Awards Available</u>

Plaintiff asserts that he is entitled to recover statutory
damages from each of the approximately 350 Defendants in Bouchat
II and IV as well as whatever number of Downstream Defendants he
may yet sue in additional cases.[20]

---

[20]   On July 31, 2003, Bouchat filed <u>Bouchat v. 7-11, Inc.</u>,
MJG-03-2229, bringing another Downstream Defendant into the
litigation.   There remain hundreds, if not thousands, of not yet
sued business entities that used the Flying B Logo in the course

The Copyright Act provides:

> [T]he copyright holder may elect, at any time
> before final judgment, to recover, instead of
> actual damages and profits, an award of
> statutory damages for all infringements
> involved in the action, with respect to any
> one work, for which any one infringer is
> liable individually, or for which any two or
> more infringers are liable jointly and
> severally, in a sum of not less than $500 or
> more than $20,000, as the court considers
> just.

35 U.S.C. 404(c)(1).

Multiple parties will be jointly and severally liable for
infringement of a copyright when they "participate in, exercise
control over, or benefit from an infringement." Sygma Photo, 778
F.2d at 92.

Each of the Bouchat II and IV Defendants "participated" in
the infringement initiated by NFLP when it developed the Flying B
Logo and included it in the portfolio of NFL team logos it
licensed.  Thus, each of the Downstream Defendants is jointly and
severally liable with NFLP.

There is no dispute that there is only one "infringed work"
at issue here - the Shield Drawing.  Moreover, the Court
concludes that for statutory damage purposes, there is only one

---

of business, for example, the overwhelming majority of
enterprises selling food and drink in the Baltimore Ravens'
marketing area.

"action." [21]   Downstream Defendants argue they are each jointly

and severally liable with NFLP for the infringement of that work,

and therefore can only be liable for one award of statutory

damages.

In support of his claim that he is entitled to recover a

statutory award from each of the Defendants, Bouchat relies upon

a hypothetical case presented in the Nimmer copyright treatise:

> Suppose... that D [a movie distributor]
> without authority distributed the [infringing
> work] to [three theaters] A, B, and C.
> Although A, B, and C are not jointly or
> severally liable with each other, D will be
> jointly and severally liable with each of the
> others.  There will be, therefore, three sets
> of statutory damages, as to each of which D
> will be jointly liable....

See 4 M. Nimmer and D. Nimmer, Copyright §14.04(E)(2)(d) (2002).

While it may well be possible to distinguish the Nimmer

example from the situation present in the instant cases, the

Court will not engage in the academic exercise.  It suffices to

state that the Court would not follow the professor's conclusion

to reward Bouchat with more than 350 separate statutory damage

awards.  The professor did not address, and doubtlessly did not

---

[21]   The Court would try all statutory damage claims in all
pending cases in a single consolidated trial.  The Court
construes "the action" as including all claims that could have
been brought in a single case.  Otherwise, a Plaintiff could
multiply statutory damage awards through the device of filing
separate lawsuits against joint infringers.

consider, a coordinated mass marketing operation such as NFLP's business.  It might be interesting to see how the professor would deal with a hypothetical presenting the facts of the instant case.  Nevertheless, faced with the issue in a courtroom rather than a classroom, the Court will not follow Professor Nimmer to reach the absurd result that Bouchat seeks.

Bouchat seeks to rely upon Columbia Pictures Television v. Feltner, 106 F.3d 284, 294 n.7 (9th Cir. 1997), rev'd on other grounds, 523 U.S. 340 (1998).  In Feltner, the Ninth Circuit held that where two separate television stations owned by the same person had each infringed the Plaintiff's copyright by separately broadcasting episodes of a television program, "[the owner's] liability vis-a-vis the stations merely render[ed] him jointly and severally liable for each station's infringements - it does not convert the stations' infringements into one."  Id.  This holding does not persuade the Court that the absence of joint liability among the Downstream Defendants themselves entitles Bouchat to multiple statutory damage awards where each infringement was a joint infringement with NFLP.[22]

---

[22]   The instant case does not present a situation in which each of many infringers acted independently and not derivatively from a common primary infringer.

The Downstream Defendants' position is supported by <u>United States Media Corp. v. Edde Entertainment Corp.</u>, 1998 WL 401532, *20 (S.D.N.Y.), which held that a supplier, distributor, and retailers of a single infringing product would be jointly and severally liable for the infringement.  <u>See also</u> <u>Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.</u>, 647 F.2d 200, 207-08 (D.D.C. 1981) ("Courts have long held that in... copyright infringement cases, any member of the distribution chain can be sued as an alleges joint tortfeasor.").

For the foregoing reasons, if the matter were not moot, the Court would conclude that the Bouchat II and IV Defendants were joint infringers with NFLP in a program for marketing products bearing all NFL team logos.  Thus, they are each jointly and severally liable with the same primary infringer, NFLP, for all infringements of the work at issue in the action.  Accordingly, Bouchat would be entitled to a single statutory damage award for which the primary infringer NFLP[23] would be jointly liable with the derivative infringers.[24]

---

[23]    Of course, NFLP is not a party to the instant cases. Therefore, as discussed above, Bouchat lost his chance for statutory damages by failing to seek them in Bouchat I.

[24]    Presumably, if the Defendants could not agree as to payment, there could be an issue as to an allocation of liability for a single statutory damages award.

VI.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Plaintiff's Motion for Partial Summary Judgment is GRANTED.

2.   Defendants's Motion for Summary Judgment to Preclude Plaintiff from Recovering Profits and Actual Damages is GRANTED.

3.   Defendants' Motion for Summary Judgment to Preclude Plaintiff from Recovering Statutory Damages is GRANTED.

4.   Judgment shall be entered by separate Order.

SO ORDERED, on Friday, 22 August, 2003.

_____/ s /_____
Marvin J. Garbis
United States District Judge